# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ADAM BACHIR,

    Plaintiff,

v.                                                Case No. 17-13323

SUBURBAN COLLECTION IMPORTED
CARS, LLC, d/b/a SUBURBAN ACURA,

    Defendant.
                                        /

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Adam Bachir filed this action against his former employer Defendant Suburban Collection Imported Cars after he was terminated for excessive absenteeism. Plaintiff alleges that his absences were covered by the Family Medical Leave Act ("FMLA"). Plaintiff asserts that Defendant violated the FMLA by both inferring with his ability to take FMLA-approved leave and terminating him for taking approved leave. (Dkt. #84, PageID 87–88.) Plaintiff further alleges that he is disabled under the Americans with Disabilities Act ("ADA") and asserts that his termination amounted to discrimination under the ADA. (Dkt. #84, PageID 89.) Defendant moved for summary judgment, arguing that Plaintiff's absences were not covered by the FMLA and that he is not disabled as a matter of law. (Dkt. # 21, PageID 274, 286.) The motion has been fully briefed, and the court concludes a hearing is unnecessary. *See* E.D. Mich. R. 7.1(f)(2). For the reasons stated below, the court will grant Defendant's Motion for Summary Judgment on all counts.

## I. BACKGROUND

Plaintiff worked as a salesman for Defendant for over two years before he was terminated for excessive absenteeism on June 22, 2017. (Dkt. #24, PageID 392.) In February 2017, Plaintiff noticed a painful mass on this throat, which he feared was cancerous. (Dkt. #24, PageID 402.) Plaintiff received leave from work from February 7–28, 2017 to seek treatment for the mass. (Dkt. #24, PageID 392.) Defendant admits that Plaintiff was authorized to take leave during this time but asserts that the leave was not covered by the FMLA. (Dkt. #24, PageID 575.) Plaintiff claims that Defendant specifically authorized him to take FMLA leave during February. (Dkt. #24, PageID 393.)

During his absence in February, Plaintiff visited several doctors. (Dkt. #24, PageID 402.) Plaintiff first visited an urgent care facility on February 7, 2017. There, he received a note excusing him from work until February 9, 2017. (Dkt. #24-5, PageID 441.) On February 10, 2017, he visited another doctor and received a note excusing him from work through February 12, 2017. (Dkt. #24-5, PageID 442.) Neither of these notes explains the reason for Plaintiff's visit, the treatment provided during the visit, or the probable duration of Plaintiff's condition. Plaintiff continued to seek treatment for the mass throughout March. (Dkt. #24, PageID 392.) In March, biopsy results revealed the mass was benign, but Plaintiff believed he had been misdiagnosed. (Dkt. #24, 402–403.)

Defendant claims that Plaintiff has a history of poor attendance and asserts that Plaintiff's attendance became increasingly sporadic after he returned from leave. Plaintiff's time logs indicate that he was late to work 22 times between February 28,

2017 and June 19, 2017. (Dkt. # 21-5.) Plaintiff also missed eight days in June.[1] Furthermore, Defendant claims that when Plaintiff returned after missing eight days, he informed his supervisor that he planned to take vacation the next week. (Dkt. #21, PageID 268.) The parties' explanations for these absences vary greatly. Defendant claims that Plaintiff's June absences were unexcused and unrelated to the mass for which Plaintiff sought medical treatment in February. (Dkt. #21, PageID 280.) Defendant admits that these June absences motivated the decision to terminate Plaintiff. (Dkt. #21, PageID 280, 284.) Plaintiff claims that all of his June absences were medically excused and related to the mass on his throat. (Dkt. #24, PageID 404.) According to Plaintiff, he was authorized to use FMLA leave and then fired for using approved leave. (Dkt. #24, PageID 406.) He further claims he was disabled under the ADA because he believed had cancer, shared these fears with his supervisors, and was subsequently terminated. (Dkt. #24, PageID 406, 419.) These factual disputes, however, do not preclude the entry of summary judgment for defendants.

## II. STANDARD

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in

---

[1] Defendant asserts that Plaintiff missed work on June 5, 6, 12, 13,15,16,17, and 21, 2017. (Dkt. # 21, PageID 268.)

support or opposition to a motion for summary judgment—only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to put forth enough evidence to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013). A "mere 'scintilla' of evidence" supporting the nonmoving party's position will not defeat a properly-supported motion for summary judgment. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251).

### III. DISCUSSION

### A. FMLA Claims

The FMLA entitles employees to take leave for "serious health condition[s]" and prohibits employers from using the taking of FMLA leave as a negative factor in deciding employment benefits. 29 U.S.C. §§ 2612, 2614. There are two distinct

theories of recovery under the FMLA: 1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1) and 2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). *See Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 334 (6th Cir. 2009). In this case, Plaintiff brings claim under both theories of recovery. The *McDonnell* burden-shifting framework, which governs employment discrimination cases, applies to both theories of recovery under the FMLA. *See Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012) (applying the *McDonnell* burden-shifting framework to both interference and retaliation FMLA claims)(citing *Donald v. Sybra, Inc.*, 667 F.3d 757 (6th Cir. 2012)).

Under the *McDonnell* framework, the plaintiff must first prove a prima facie case of FMLA violation. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for an adverse employment action. *Id*. Finally, the burden shifts back to the plaintiff to show that the articulated reason was pretext to mask discrimination. *Id*.

Count I of the Amended Complaint states an FMLA claim under the retaliation theory. (Dkt. # 16, PageID 86.) To prove a prima facie claim for retaliation under 29 U.S.C. § 2615(a)(2) of the FMLA, a plaintiff must prove that:

1) he engaged in an activity protected by the [FMLA];
2) this exercise of his protected rights was known to the defendant;
3) defendant thereafter took an employment action adverse to the plaintiff; and
4) there was a causal connection between the protected activity and the adverse employment action.

*Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009). Count II states a claim for FMLA interference. The elements of an FMLA interference claim are similar to the elements of a retaliation claim:

> 1) [Plaintiff] was an eligible employee;
> 2) his employer was a covered employer;
> 3) he was entitled to leave under the FMLA;
> 4) he gave his employer notice of his intent to take leave; and
> 5) his employer denied him FMLA benefits or interfered with FMLA rights to which he was entitled.

*Morris*, 320 F. App'x at 336. Under each theory of recovery, the plaintiff must establish that he suffered a serious medical condition to survive summary judgment. *Id.* at 338 (granting summary judgment for defendant on plaintiff's interference and retaliation claims because the court determined that medical condition at issue—an outpatient needle biopsy—was not a serious health condition).

1. Serious Health Condition

A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care . . . or . . . continuing treatment by a health care provider." 29 U.S.C. § 2611.11. A serious health condition involving "continuing treatment" is one resulting in "a period of incapacity of more than three consecutive days and any subsequent treatment . . . relating to the same condition." 29 C.F.R. § 825.115.a. Incapacity is defined as the "inability to work, attend school or perform other regular daily activities." 29 C.F.R. § 825.113.b. The FMLA does not cover "routine, commonplace illnesses of short duration." *Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452, 456 (6th Cir. 2005). For example, the FMLA does not cover illnesses for which the treatment "includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids,

exercise, and other similar activities that can be initiated without a visit to a health care provider." 73 Fed. Reg. 67,934, 68,079 (Nov. 17, 2008) (codified at 29 C.F.R. Pt. 825). The court determines whether a health condition is "serious" and, therefore, covered by the FMLA. *See Morris*, 320 F. App'x at 337.

The parties dispute whether Plaintiff experienced a "serious health condition." Plaintiff alleges that the mass on his throat, for which he initially sought treatment in February, qualified as a serious health condition. (Dkt. # 24, PageID 401–402.) Plaintiff further suggests that the treatment he received throughout May and June was a continuation of the treatment he initially received in February. (Dkt. #24, PageID 403–405.) Defendant asserts that Plaintiff did not experience a serious health condition in February because he was not incapacitated for more than three consecutive days. (Dkt. #21, PageID 276.) Defendant further asserts that Plaintiff's June absences were not a continuation of his earlier medical treatment and did not independently qualify as serious health conditions. (Dkt. #21, PageID 278.) The court need not resolve this dispute. Taken in the light most favorable to Plaintiff, the evidence does not demonstrate that he suffered a serious health condition in either February or June as a matter of law.

Plaintiff was not hospitalized when he sought treatment for the mass on his throat in February. The medical documentation Plaintiff submits indicate that he visited medical providers twice during his first week off work, the first on February 7, 2017, and the second on February 10, 2017. Plaintiff does not provide any actual records from

either visit.[2] Instead, he submits standard form excuses. The first, dated February 7, 2017, excuses Plaintiff from work until February 9, 2017. (Dkt. #24-5, PageID 441.) The second, dated February 10, 2017, states that Plaintiff should "not return to work" until February 13, 2017. (Dkt. #24-5, PageID 441.) Plaintiff asserts that he saw the same doctor on both occasions.[3] (Dkt. #24, PageID 412.) Assuming Plaintiff's version of the facts as true, "the fact that plaintiff was off work for more than three consecutive days does not, in itself, imply a serious health condition." *Booth v. Roadway Exp., Inc.*, No. C-1-03-660, 2005 WL 1705064, at *9 (S.D. Oh. July 21, 2005) (citing *Bradley v. Mary Rutan Hospital Assoc.,* 322 F.Supp.2d 926, 942 (S.D. Oh. 2004)).

Neither note gives any indication of the reasons for Plaintiff's visits, the treatment he received, or the physical limitations, if any, imposed by his medical providers. In *Lackey v. Jackson Cty.*, the Sixth Circuit held that the plaintiff's "ambiguous" doctors' notes—which did not state that plaintiff was incapacitated or explain the reasons for plaintiff's absence from work—were insufficient to prove that plaintiff suffered a serious health condition. *See Lackey v. Jackson Cty.*, 104 F. App'x 483, 489 (6th Cir. 2004). Similarly, in *Jude v. Hitachi Auto*, the court held that plaintiff's "facially ambiguous standard form excuse" was insufficient to establish that he suffered a serious medical condition as a matter of law. *Jude v. Hitachi Auto. Sys. Am. Inc.*, No. 5:15-cv-57-KKC,

---

[2] The only medical record Plaintiff provides from February is a two-page report from a doctor's visit on February 24, 2017. (Dkt. #24-6, PageID 450.) This report contains no certification that Plaintiff suffered a serious medical condition and does not place any work restrictions on Plaintiff.

[3] The court will note that the form excuses are from different medical clinics and appear to bear the signatures of different physicians. Nevertheless, the court will construe the evidence in the light most favorable to Plaintiff and accept the assertion that he was excused for more than three consecutive days by the same medical provider.

8

2016 WL 3976651, at *3 (E.D. Ky. July 22, 2016). Accordingly, Plaintiff's undetailed standard form excuses are insufficient as a matter of law to prove that he suffered a serious health condition.

For Plaintiff's June abbesses, he submits three more standard form excuses, none of which contain any information regarding his medical condition or possible work restrictions. (Dkt. #24-12, PageID 479; Dkt. #24-23, PageID 527; Dkt. #24-24, PageID 529.) Additionally, none of these forms excuse Plaintiff from work for more than three full consecutive days, which is required for FMLA protection. The medical records Plaintiff submits for some of his June absences indicate that he experienced only routine gastrointestinal issues. These records do not indicate that Plaintiff was under any work or activity restrictions. (Dkt. # 24-9, PageID 465; Dkt. #24-10, PageID 469–73.) Routine gastrointestinal illnesses are explicitly excluded from FMLA coverage. *See* 73 C.F.R. §67934, 68079 (2008). This evidence does not independently establish that Plaintiff suffered a serious health condition in June.

The court need not resolve the factual dispute of whether Plaintiff's June absences were a continuation of his treatment in February because Plaintiff's proffered evidence does not establish that he suffered a serious health condition on either occasion. Accordingly, Plaintiff's prima facie claims for FMLA retaliation and interference fail as a matter of law, and the court need not further analyze either claim under the *McDonnell* burden-shifting framework. *See Morris*, 320 F. App'x at 338. ("Because [plaintiff's] leave was not on account of a serious health condition, he cannot establish . . . that he engaged in an activity protected by the FMLA.").

2. Plaintiff's Estoppel Argument

Plaintiff's argument that he be entitled to FMLA leave under a theory of equitable estoppel fails as a matter of law. The Sixth Circuit recognizes estoppel arguments in the FMLA context under certain circumstances. *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). To prove an estoppel argument, "a plaintiff must demonstrate '(1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation.'" *Ritenour v. Tenn. Dep't of Human Servs.*, 497 F. App'x 521, 528 (6th Cir. 2012) (quoting *Dobrowski*, 571 F.3d at 557). Plaintiff offers one piece of evidence in support of his estoppel argument—testimony from his own deposition.[4] This testimony fails to satisfy the first two requirements for estoppel. The relevant portions of Plaintiff's deposition are as follows:

> Q. So during this February, March time period, did anyone at Suburban say anything about you taking time off of work?
>
> A. Yes.
>
> Q. What was said and by whom?
>
> A. Sam and Hans basically told me I could take off any time while I was sick. I wasn't given anything to sign or documentation for FMLA. I don't know. I was just doing what I was told. They said, you can take time off, what you need. Hans told me about his wife having cancer, and that

---

[4] Plaintiff also contends that the deposition testimony of Essam Khalil, Plaintiff's direct supervisor, supports estoppel as does a letter written by Defendant to the EEOC. (Dkt. #24, PageID 414.) In his deposition, Mr. Khalil does not admit that Plaintiff was authorized to take FMLA leave. To the contrary, Mr. Khalil recalls that Plaintiff requested FMLA leave but was informed by human resources that "he wasn't eligible at that time." (Dkt. #24-3, PageID 433.) Additionally, the EEOC letter referenced by Plaintiff (Dkt. #24-2, PageID 427) does not state that Defendant approved FMLA leave—the letter states that Plaintiff "was given time off for a medical condition," which Defendant does not dispute. (Dkt. #25, PageID 577.)

> they were there with me every step of the way. And to take the time off as I needed, you know, until I got better. And to come in when I could.
>
> . . .
>
> Q. You said you weren't given any paperwork, did you ever ask anyone for FMLA leave or FMLA paperwork?
>
> A. Yes, I asked Sam, I said, what do I have to fill out to do all this. He said, nothing, you're fine. Me and Hans know about it, you're communicating with both of us, you are sending text messages, you are faxing Dr.'s notes. He goes, it's all taken care of.
>
> I mean, I have never, ever went on family medical leave in my life. I have no idea what was supposed to be given to me, you know, for it.

(Dkt. #24, PageID 414; Dkt. #24-8, PageID 460.)

This testimony relates to Plaintiff's leave in February, which Defendant does not dispute was authorized, albeit not under the FMLA. (Dkt. # 25, PageID 577.) Defendant's position remains that Plaintiff's absences in June, not February, resulted in his termination. Viewing the evidence in the light most favorable to Plaintiff, these statements do not rise to the level of "definite misrepresentation" necessary to satisfy the first element of estoppel.

Federal circuit precedent informs this determination. In *Dobrowski*, the Sixth Circuit concluded that defendant-employer made a "definite misrepresentation" regarding Plaintiff's FMLA eligibility because Plaintiff "applied for leave on an FMLA form and received written notice from his company that his leave was 'pursuant to the Family and Medical Leave Act' and that he was an 'eligible employee.'" *Dobrowski*, 571 F.3d at 557 (dismissing plaintiff's FMLA claim because plaintiff failed to show reliance on defendant's definite misrepresentations of his eligibility). In a case factually similar to the instant case, the Third Circuit held that an employer's generalized reassurances to an employee seeking leave did not rise to the level of definite misrepresentation:

11

> [Plaintiff] also cites [his employer's] statements from their . . . meeting prior to his leave as qualifying misrepresentations because [employer assured [plaintiff] that he should not worry and that his job would be there upon his return. The District Court properly concluded that these statements do not satisfy [the definite misrepresentation] element because they do not address [plaintiff's] FMLA eligibility. This finding does not, as [plaintiff] contends, demonstrate that the District Court rendered credibility determinations prohibited at this stage by Federal Rule of Civil Procedure 56. Rather, this conclusion shows the District Court engaged in a straightforward reading of the record.

*Palan v. Inovio Pharm.*, Inc., 653 F. App'x 97, 101 n.8 (3d Cir. 2016) (internal citations omitted). A straightforward reading of Plaintiff's deposition testimony, particularly Plaintiff's statement that his supervisors "basically told me I could take off any time while I was sick," yields no evidence that Defendant affirmatively approved Plaintiff for FMLA leave. Accordingly, Plaintiff's estoppel argument fails as a matter of law.

Even if the testimony Plaintiff cites could amount to a definite misrepresentation of his FMLA eligibility, Plaintiff has offered no evidence that he relied on this misrepresentation in taking leave in either February or June. Plaintiff simply asserts that he "relied on the misrepresentation and continued to fax Dr.'s notes" to his supervisors. (Dkt. #24, PageID 415.) Plaintiff fails to assert that but for Defendant's misrepresentations regarding his FMLA eligibility, he would not have taken leave on either occasion. Plaintiff's conclusory elemental recitation is insufficient to satisfy the second requirement for estoppel and, therefore, insufficient to survive summary judgment. *See Arendale v. City of Memphis,* 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations . . . . Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."); *Stalbosky v. Belew,* 205 F.3d 890,

895 (6th Cir. 2000) (holding that vague and conclusory statement were insufficient to counter a motion for summary judgment).

## B. ADA Claim

The Sixth Circuit succinctly summarized the requirements for ADA discrimination claims in *Latowski v. Northwoods Nursing Ctr.*:

> The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case of discrimination under the ADA requires the plaintiff to show that (1) she is disabled, (2) she is otherwise qualified for the job, with or without reasonable accommodation, and (3) she was discriminated against because of her disability. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). A person is "disabled" under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." § 12102(1). An individual is "regarded as" disabled if an employer "mistakenly believes that an employee has a physical impairment that substantially limits one or more major life activities or . . . mistakenly believes that an actual, nonlimiting impairment substantially limits one or more of an employee's major life activities." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008) (quoting *Sutton v. United Air Lines*, 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999)). "The regarded-as-disabled prong of the ADA 'protects employees who are perfectly able to perform a job, but are rejected because of the myths, fears and stereotypes associated with disabilities.'" *Id.* at 703 (quoting *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008)).

*Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 486–87 (6th Cir. 2013).

Plaintiff asserts that he meets the regarded-as-disabled definition of disability because he personally believed he had cancer and shared this concern with his supervisors. (Dkt. #24, PageID 420–21.) This claim is unfounded.

To qualify as a disability under the regarded-as-disabled prong of the ADA, a condition must last more than six months. 42 U.S.C. 12102(3)(B). Plaintiff has not alleged, much less produced evidence sufficient to show, that the mass

13

on his throat afflicted him for more than six months. Drawing all reasonable inferences in favor of Plaintiff, his condition lasted from February to June of 2017. Accordingly, the mass constitutes a transitory condition and is not a disability under the ADA. Moreover, Plaintiff puts forth no evidence that his supervisors believed he had cancer, let alone considered him disabled. To the contrary, in March, Plaintiff informed his supervisors that the mass on his throat was benign. (Dkt. #21-3, PageID 301; Dkt. #21-13, PageID 380.) Because Plaintiff has offered no evidence to prove that his condition lasted more than six months, nor to suggest that his employers considered him disabled at the time of his termination, Plaintiff's ADA claim fails as a matter of law.

## IV.  CONCLUSION

Summary judgment is appropriate because there is no dispute of material fact and Plaintiff's claims fail as a matter of law. Plaintiff's FMLA claims fail because he has not established that he suffered a serious health condition. Similarly, Plaintiff's ADA claim fails because he has not offered evidence to prove he was disabled within the statutory meaning of disability. Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Dkt. #21) is GRANTED on all counts. A separate judgment will issue.

s/Robert H. Cleland<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  September 27, 2018

14

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 27, 2018, by electronic and/or ordinary mail.

s/William Barkholz for Lisa Wagner  
Case Manager and Deputy Clerk  
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C1 ORDERS\17-13323.BACHIR.summary.judgment.HEB.2.docx